**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **JOSHUA HARDY**, individually and on behalf of all others similarly situated, | § § § | **CASE NO:** 22-cv-00322 |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| **NISOURCE INC.**, | § § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| Defendant. | § § | **CLASS ACTION (FED. R. CIV. P. 23)** |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

1. Plaintiff Joshua Hardy (Hardy) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant NiSource Inc. (NiSource) under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), and Kentucky Wage and Hour Act, K.R.S. § 337.010, *et seq.* (KWHA).

2. NiSource is one of the largest utility companies in the United States, serving approximately four million natural gas and electric customers nationwide through its Columbia Gas and NIPSCO brands.

3. NiSource uses inspectors, like Hardy, to carry out its work.

4. Hardy, and the other workers like him, typically worked 10-to-13 hours each day and regularly worked more than 60 hours per week.

5. But NiSource did not pay these workers overtime for all the hours they worked over 40 hours in a single workweek.

6. Instead of paying overtime for all hours worked over 40 in a single week as required by the FLSA and KWHA, NiSource paid these workers a daily rate without time and a half for all the hours they worked over 40 in a single week.

7. The compensation NiSource paid these workers did not constitute a salary.

8. This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

9. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

10. This Court has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because NiSource is headquartered in this District and Division.

## PARTIES

12. Hardy worked for NiSource as a welding inspector through its brand NIPSCO from July 2019 to December 2019 in Warsaw, Indiana and again from May 2020 to October 2020 in La Porte, Indiana.

13. Hardy worked for NiSource as a welding inspector through its brand Columbia Gas from October 2021 to January 2022 in Georgetown, Kentucky.

14. While working as an inspector for NiSource, he was paid a day-rate and did not receive overtime compensation at one and one half times his regular rate of pay for all the hours he worked over 40 in a workweek. His consent to be a party plaintiff is attached as Exhibit A.

15. Hardy brings this action on behalf of himself and other similarly situated inspectors who were paid under NiSource's day-rate pay plan.

16. NiSource paid each of these workers a flat amount for each day worked and failed to pay them overtime compensation for all hours worked in excess of 40 hours in a workweek.

17. The class of similarly situated workers sought to be certified as a collective action under

the FLSA is defined as:

> **Current and former inspectors employed by, or performing work on behalf of, NiSource Inc., who were paid a day-rate and did not receive overtime compensation for all hours worked over 40 each week during the past three years.** (the FLSA Class).

18. Hardy seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

19. Hardy further seeks certification of a class action under FED. R. CIV. P. 23 to remedy NiSource's violations of the KWHA.

20. The class of similarly situated workers sought to be certified as a class action under the KWHA is defined as:

> **Current and former inspectors employed by, or performing work on behalf of, NiSource Inc., in Kentucky who were paid a day-rate and did not receive overtime compensation for all hours worked over 40 each week during the past five years.** (the Kentucky Class).

21. Hardy seeks certification of this Rule 23 class action under FED. R. CIV. P. 23.

22. NiSource is a Delaware corporation headquartered in Merrillville, Lake County, Indiana that conducts business nationwide, including in Indiana and Kentucky.

23. NiSource may be served through its registered agent for process, Corporation Service Company, at 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

## COVERAGE UNDER THE FLSA AND KWHA

24. For at least the past decade, NiSource has consistently employed dozens of inspectors throughout the United States.

25. At all times hereinafter mentioned, NiSource has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. At all times hereinafter mentioned, NiSource has been an employer within the meaning of the KWHA.

27. At all times hereinafter mentioned, NiSource has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

28. At all times hereinafter mentioned, NiSource has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

29. At all times hereinafter mentioned, Hardy and the members of the FLSA and Kentucky Classes were engaged in commerce or in the production of goods for commerce.

**FACTS**

30. NiSource is one of the largest utility companies in the United States, serving nearly four million natural gas and electric customers across six states through its Columbia Gas and NIPSCO brands. *See* https://www.nisource.com/ (last visited Oct. 26, 2022).

31. To provide the services it markets to its customers, NiSource employs inspectors like Hardy and the FLSA and Kentucky Class Members to perform inspection services.

32. For example, Hardy worked as a welding inspector for NiSource in Indiana from approximately July 2019 to December 2019 and May 2020 to October 2020 and in Kentucky from approximately October 2021 to January 2022.

33. Hardy and the FLSA and Kentucky Class Members all inspected various aspects of pipelines used by NiSource to transport natural gas to be distributed to its customers nationwide.

34. NiSource relies on Hardy and the FLSA and Kentucky Class Members to ensure the safe transportation of goods in interstate commerce.

35. NiSource's goods include natural gas which travels through pipelines across state lines.

36. Hardy and the FLSA and Kentucky Class Members were responsible for the safe transportation of NiSource's goods through their job duties of inspecting elements of the pipeline infrastructure.

37. Hardy and the FLSA and Kentucky Class Members traveled interstate to perform their duties of inspecting elements of the pipeline infrastructure.

38. Hardy and the FLSA and Kentucky Class Members used tools, equipment, and consumables in their work interstate on oil and gas pipelines and related infrastructure.

39. Hardy and the FLSA and Kentucky Class Members are involved in building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

40. Hardy and the FLSA and Kentucky Class Members use their vehicles to perform essential aspects of their inspection related job duties.

41. Hardy and the FLSA and Kentucky Class Members use their vehicles to carry tools, equipment, and consumables that are used on the oil and gas transportation network of pipelines and related infrastructure.

42. Hardy and the FLSA and Kentucky Class Members work alongside other workers who are themselves engaged in building, modifying, and maintaining the natural gas transportation network of pipelines and related infrastructure.

43. NiSource cannot allow its goods to travel within interstate commerce without the job duties performed by Hardy and the FLSA and Kentucky Class Members.

44. Hardy and the FLSA and Kentucky Class Members are essential to NiSource's operations.

45. The pipelines utilized by NiSource to transport natural gas exist as a conduit, much like roads or railways, to allow goods to enter and take part in interstate commerce.

46. Hardy and the FLSA and Kentucky Class Members' duties are vital to allowing natural gas to travel from the oil and gas fields to refineries.

47. Hardy and the FLSA and Kentucky Class Members are regularly a part of interstate commerce.

48. Hardy and the FLSA and Kentucky Class Members operate vehicles that are crossing state lines.

49. Hardy and the FLSA and Kentucky Class Members operate vehicles with a gross vehicle weight rating of 10,000 pounds or less.

50. Hardy and the FLSA and Kentucky Class Members contribute to and/or facilitate the movements of NiSource's goods in interstate commerce.

51. Hardy and the FLSA and Kentucky Class Members' job duties directly relate to the safe transportation of NiSource's goods.

52. If Hardy and the FLSA and Kentucky Class Members do not perform their job duties correctly, the pipelines and infrastructure transporting NiSource's goods could explode, causing serious personal and financial harm.

53. The inspectors are an integral part of NiSource's business operations as they help protect NiSource's utilities system that services millions of homes and businesses across six states.

54. NiSource's inspectors are not required to have specialized academic training to perform their job duties as a standard prerequisite.

55. Moreover, the job functions of Hardy and the FLSA and Kentucky Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

56. To the extent the inspectors make "decisions," the decisions do not require the exercise of independent discretion and judgment.

57. Instead, the inspectors apply well-established techniques and procedures.

58. Inspectors are not permitted to deviate from established quality standards.

59. Hardy and the FLSA and Kentucky Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

60. Hardy and the FLSA and Kentucky Class Members did not have any supervisory or management duties and to the extent that they did, they performed those duties on NiSource's behalf.

61. The inspectors are blue collar workers. They rely on their hands, physical skills, and energy to perform manual labor in the field.

62. Very little skill, training, or initiative was required of Hardy and the FLSA and Kentucky Class Members to perform their inspection duties.

63. For the purpose of FLSA and KWHA overtime claims, the FLSA and Kentucky Class Members performed substantially similar job duties related to inspection services of pipelines.

64. With these job duties, these Inspectors are clearly non-exempt under the FLSA.

65. Hardy worked for NiSource as a welding inspector performing inspection services on pipelines carrying natural gas for NiSource to ultimately distribute to millions of customers nationwide.

66. NiSource paid Hardy and the FLSA and Kentucky Class Members a flat sum for each day worked and failed to provide them with overtime pay for all of the hours they worked in excess of 40 hours in a workweek.

67. Hardy worked for NiSource in Indiana from approximately July 2019 to December 2019 and May 2020 to October 2020 and in Kentucky from approximately October 2021 to January 2022 as an inspector.

68. Hardy would conduct his day-to-day activities within designated parameters and in accordance with a predetermined construction or pipeline plan.

69. Hardy was paid on a day-rate basis throughout his employment with NiSource.

70. NiSource determined Hardy and the FLSA and Kentucky Class Members' rates of pay.

71. NiSource set Hardy and the FLSA and Kentucky Class Members' schedules and the days they worked.

72. Hardy and the FLSA and Kentucky Class Members were economically dependent on NiSource while working for NiSource.

73. Hardy and the FLSA and Kentucky Class Members were not paid a salary.

74. NiSource never guaranteed Hardy and the FLSA and Kentucky Class Members a salary.

75. NiSource never paid Hardy or the FLSA and Kentucky Class Members on a salary basis.

76. Hardy regularly worked well in excess of 40 hours in a workweek each week for NiSource.

77. But NiSource did not pay Hardy overtime compensation for all the hours he worked in the weeks when he worked more than 40 hours.

78. Instead of paying overtime compensation for all hours worked over 40 in a single workweek as required by the FLSA and KWHA, NiSource paid Hardy a daily rate without time and a half for all the hours he worked over 40 in a single week.

79. Periodically, NiSource would pay Hardy per diems, equipment pay, and other premium pay in addition to his day rate.

80. These additional payments are remuneration and should be factored into the overtime calculations as part of the regular rate of pay for Hardy.

81. NiSource did not pay Hardy time and a half his regular rate of pay for every overtime hour worked.

82. Hardy and the FLSA Class Members worked for NiSource at some point over the past three years across the United States.

83. Hardy and the Kentucky Class Members worked for NiSource at some point during the past five years in Kentucky.

84. As a result of NiSource's pay policies, Hardy and the FLSA and Kentucky Class Members were denied the overtime pay required by federal and state law.

85. NiSource is required to keep accurate records of the hours, or at least days, its employees work.

86. It also must keep accurate records of the amount of pay these workers receive.

87. Despite knowing the FLSA and KWHA's requirements and that its inspectors regularly worked more than 40 hours in a workweek, NiSource does not pay them overtime for all hours worked each workweek.

88. The FLSA and Kentucky Class Members also worked similar hours and were denied overtime compensation for all hours worked each workweek because of the same illegal pay practice.

89. The FLSA and Kentucky Class Members regularly worked more than 40 hours each workweek.

90. Like Hardy, the FLSA and Kentucky Class Members were generally scheduled for daily shifts of 10 (or more) hours for weeks at a time.

91. NiSource did not pay Hardy on a salary basis.

92. NiSource did not pay the FLSA and Kentucky Class Members on a salary basis.

93. NiSource paid Hardy on a day-rate basis.

94. NiSource paid the FLSA and Kentucky Class Members on a day-rate basis.

95. NiSource failed to pay Hardy overtime compensation for all hours worked over 40 hours in a single workweek.

96. NiSource failed to pay the FLSA and Kentucky Class Members overtime compensation for all hours worked over 40 hours in a single workweek.

## FLSA VIOLATIONS

97. Hardy incorporates the preceding paragraphs by reference.

98. As set forth herein, NiSource violated the FLSA by failing to pay Hardy and the FLSA Class Members overtime compensation at one and one-half times the regular rate of pay for all hours worked over 40 in a workweek. 29 U.S.C. § 207(a).

99. At all relevant times, NiSource has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

100. NiSource employed Hardy and each member of the FLSA Class as inspectors during the relevant period.

101. NiSource's pay policy denied Hardy and the FLSA Class Members overtime compensation for all hours worked over 40 in a workweek at the legal overtime rates required by the FLSA.

102. NiSource owes Hardy and the FLSA Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

103. NiSource knew, or showed reckless disregard for whether, its failure to pay overtime compensation for all overtime hours worked violated the FLSA. Its failure to pay overtime compensation to Hardy and the FLSA Class Members is willful.

104. Due to NiSource's FLSA violations, Hardy and the FLSA Class Members are entitled to recover from NiSource for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

105. The improper pay practices at issue were part of a continuing course of conduct, entitling Hardy and FLSA Class Members to recover for all such violations, regardless of the date they occurred.

**KWHA VIOLATIONS**

106. Hardy incorporates the preceding paragraphs by reference.

107. Hardy brings this claim under the KWHA as a Rule 23 class action.

108. NiSource is subject to the overtime requirements of the KWHA because NiSource is an employer pursuant to K.R.S. § 337.010(1)(d).

109. During all relevant times, Hardy and the Kentucky Class Members were covered employees entitled to the protections afforded by the KWHA. *See* K.R.S. § 337.010(1)(e).

110. NiSource's pay policy denied Hardy and the Kentucky Class Members compensation as required by K.R.S. §§ 337.050, 337.285.

111. At all relevant times, NiSource was subject to the requirements of the KWHA.

112. At all relevant times, NiSource employed Hardy and each Kentucky Class Member as "employees" within the meaning of the KWHA.

113. The KWHA requires employers like NiSource to pay employees at one and one-half (1.5) times the regular rate of pay for all hours worked more than 40 hours in a single workweek. As such, Hardy and each Kentucky Class Member are entitled to overtime pay pursuant to the KWHA. *See* K.R.S. § 337.285.

114. The KWHA requires employers like NiSource to pay employees at one and one-half (1.5) times the regular rate of pay for any and all time worked on the seventh consecutive day of work. As such, Hardy and each Kentucky Class Member are entitled to overtime pay pursuant to the KWHA. *See* K.R.S. § 337.050.

115. NiSource had a policy and practice of failing to pay these workers overtime compensation for all hours worked in excess of 40 hours per workweek.

116. NiSource owes Hardy and the Kentucky Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last five years.

117. NiSource knew, or showed reckless disregard for whether, its failure to pay overtime compensation for all hours worked over 40 each workweek violated the KWHA. Its failure to pay overtime compensation to Hardy and the Kentucky Class Members for these hours is willful.

118. Due to NiSource's KWHA violations, Hardy and the Kentucky Class Members are entitled to recover from NiSource for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

119. The improper pay practices at issue were part of a continuing course of conduct, entitling Hardy and Kentucky Class Members to recover for all such violations, regardless of the date they occurred.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

120. The illegal pay practices NiSource imposed on Hardy were likewise imposed on the FLSA and Kentucky Class Members.

121. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and KWHA.

122. Numerous other individuals who worked with Hardy were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

123. Based on his experiences and tenure with NiSource, Hardy is aware that NiSource's illegal practices were imposed on other FLSA and Kentucky Class Members.

124. The FLSA and Kentucky Class Members were improperly classified and not paid overtime compensation for all hours worked when they worked in excess of 40 hours per workweek.

125. NiSource's failure to pay overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the FLSA and Kentucky Class Members.

126. Hardy's experiences are therefore typical of the experiences of the FLSA and Kentucky Class Members.

127. The specific job titles or precise job locations of the various members of the FLSA and Kentucky Class Members do not prevent collective treatment.

128. Hardy has no interest contrary to, or in conflict with, the FLSA and Kentucky Class Members.

129. Like each FLSA and Kentucky Class Member, Hardy has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

130. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

131. Absent a class or collective action, many members of the FLSA and Kentucky Classes will not obtain redress of their injuries and NiSource will reap the unjust benefits of violating the FLSA and KWHA.

132. Furthermore, even if some of the FLSA and Kentucky Class Members could afford individual litigation against NiSource, it would be unduly burdensome to the judicial system.

133. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the FLSA and Kentucky Class Members and provide for judicial consistency.

134. The questions of law and fact common to Hardy and each of the FLSA and Kentucky Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether NiSource employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA and KWHA;

    b. Whether NiSource's decision to classify the members of the Classes as exempt was made in good faith;

    c. Whether the compensation NiSource paid to members of the Classes constitutes a salary under the FLSA and KWHA;

  d. Whether NiSource's decision to not pay time and a half for overtime to the members of the FLSA and Kentucky Classes for all hours worked over 40 in a workweek was made in good faith;

  e. Whether NiSource's violation of the FLSA and KWHA was willful; and

  f. Whether NiSource's illegal pay practices were applied to the FLSA and Kentucky Class Members.

135. Hardy and the FLSA and Kentucky Class Members sustained damages arising out of NiSource's illegal and uniform employment policy.

136. Hardy knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

137. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

## JURY DEMAND

138. Hardy demands a trial by jury.

## RELIEF SOUGHT

139. WHEREFORE, Hardy prays for judgment against NiSource as follows:

  a. An Order designating the FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  b. For an Order appointing Hardy and his counsel to represent the interests of the FLSA and Kentucky Classes;

  c. For an Order finding NiSource liable to Hardy and the FLSA Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

  d. For an Order certifying a Rule 23 class action on behalf of Kentucky Class Members who worked for or on behalf of NiSource in Kentucky at any time during the last five years;

  e. For a judgment awarding Hardy and the Kentucky Class Members all unpaid overtime compensation and other damages available under the KWHA;

  f. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

  g. For an Order granting such other and further relief as may be necessary and appropriate.

Dated: October 31, 2022    Respectfully submitted,

By: */s/ Douglas M. Werman*
Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Ste 1402
Chicago, IL 60602
312-419-1008 – Telephone
dwerman@flsalaw.com
msalas@flsalaw.com

Michael A. Josephson
Texas Bar No. 24014780
mjosephson@mybackwages.com
Andrew W. Dunlap
Texas Bar No. 24078444
adunlap@mybackwages.com
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Ste 3050
Houston, TX 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

Richard J. (Rex) Burch
Texas Bar No. 24001807
rburch@brucknerburch.com
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

**ATTORNEYS IN CHARGE FOR PLAINTIFF**